IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KIMBERLY V. BEKAT,              )
                                )
        Plaintiff,               )
                                )
    v.                           )    1:10CV159
                                )
CAROLYN W. COLVIN,[1]            )
Commissioner of Social Security, )
                                )
        Defendant.               )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Plaintiff Kimberly Bekat ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

**I.  PROCEDURAL HISTORY**

Plaintiff filed her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on May 2, 2006 (protective filing date, April 17, 2006), alleging a disability onset date of December 15, 2000. (Tr. at 117-24.)[2] Her applications were denied initially (Tr. at 45-46, 49-56) and upon reconsideration (Tr. at 47-48, 58-67).  Thereafter, Plaintiff requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  (Tr. at 70.)  Plaintiff, along with her attorney, her mother, and a vocational expert ("VE") attended the subsequent video hearing on January 15, 2009.  (Tr. at 12.) The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 20) and, on January 22, 2010, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-3).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.  The claimant met the insured status requirements of the Social Security Act through December 31, 2005.

2.  The claimant has not engaged in substantial gainful activity since December 15, 2000, the

---

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer (Doc. 7).

2

>    alleged onset date (20 CFR 404.1571 *et seq.*, and
>    416.971 *et seq.*).
>
> 3. The claimant has the following severe
>    impairments: bulging lumbar disc, migraines and
>    seizure disorder (20 CFR 404.1521 *et seq.* and
>    416.921 *et seq.*).
>
> . . . .
>
> 4. The claimant does not have an impairment or
>    combination of impairments that meets or
>    medically equals one of the listed impairments in
>    20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
>    404.1525, 404.1526, 416.925 and 416.926).
>
> . . . .
>
> 5. After careful consideration of the entire record,
>    the undersigned finds that the claimant has the
>    residual functional capacity to perform light
>    exertional work, which is defined as the ability
>    to lift/carry 10 pounds frequently and 20 pounds
>    occasionally, stand 6 hours in an 8 hour workday,
>    walk 6 hours in an 8 hour workday and sit 6 hours
>    in an 8 hour workday, as defined in 20 CFR
>    404.1567(b) and 416.967(b). Additionally, the
>    claimant is to avoid hazardous situations and
>    environments.

(Tr. at 14, 16, 17.)

The ALJ then considered Plaintiff's age, education, work experience, and the above residual functional capacity ("RFC"), along with the VE's testimony regarding these factors, and determined that Plaintiff was able to perform her past relevant work and therefore was not under a "disability," as defined in the Act, from her alleged onset date through the date of the decision. (Tr. at 19-20.)

**II. ANALYSIS**

Federal law "authorizes judicial review of the Social

Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citations omitted) (internal brackets omitted) (setting out the standards for judicial review). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "[I]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (quoting Laws, 368 F.2d at 642) (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)) (internal brackets omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner or the ALJ]." Hancock, 667 F.3d at 472 (quoting Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005)). The issue before this court, therefore, "is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589.

In undertaking this limited review, the court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.

Id. The claimant bears the burden as to the first four steps, but the Government bears the burden as to the fifth step. Id. at 472-73.

In undertaking this sequential evaluation process, the five steps are considered in turn, although a finding adverse to the claimant at either of the first two steps forecloses a disability designation and ends the inquiry. In this regard, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

If a claimant carries his or her burden at each of the first two steps and also meets her burden at step three of establishing an impairment that meets of equals an impairment listed in the regulations, the claimant is disabled, and there is no need to proceed to step four or five. See Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then the analysis continues and the ALJ must assess the claimant's RFC. Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work based on that RFC, the analysis proceeds to the fifth step, which shifts the

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

7

burden of proof and "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. (Tr. at 14.) She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: a bulging lumbar disc, migraines, and a seizure disorder. (Id.) The ALJ found at step three that these impairments did not meet or equal a disability listing. Accordingly, he assessed Plaintiff's RFC and determined that Plaintiff could perform light work with further limitations as to hazardous situations and environments. (Tr. at 17.) Because Plaintiff's past relevant work as a payroll clerk "does not

8

require the performance of work-related activities precluded by" her RFC, the ALJ found that Plaintiff could return to her past relevant work under step four of the analysis and was therefore not disabled. (Tr. at 19.)

Plaintiff argues that, in formulating her RFC, the ALJ improperly rejected her statements regarding the intensity, persistence, and limiting effects of her seizures and migraines as "'not fully consistent with the medical evidence of record.'" (Doc. 10 at 4 (citing Tr. at 18).) In Craig, the Fourth Circuit provided a two-part test for evaluating a claimant's statements about symptoms. 76 F.3d at 594-95. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (emphasis omitted) (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)). In the present case, the ALJ determined that Plaintiff's seizures and migraine headaches "could reasonably be expected to cause the alleged symptoms," including lethargy and confusion. (Tr. at 18.)

Plaintiff's case therefore hinges on the second part of the test, which requires that the ALJ consider all available evidence, including Plaintiff's statements about her symptoms, in order to determine whether Plaintiff is disabled. Craig, 76

9

F.3d at 595. Notably, while the ALJ must consider Plaintiff's statements and other subjective evidence at this step, he need not credit them to the extent they conflict with the objective medical evidence or to the extent that the underlying impairment could not reasonably be expected to cause the symptoms alleged. Id. at 595-96. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Thus, a plaintiff's symptoms "will be determined to diminish [her] capacity for basic work activities to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings," Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

    (i) Your daily activities;

    (ii) The location, duration, frequency, and intensity of your pain or other symptoms;

    (iii) Precipitating and aggravating factors;

    (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors, heard Plaintiff's testimony, and observed her demeanor, the ALJ's credibility determination is entitled to deference. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Accordingly, the court "will reverse an ALJ's credibility determination only if the [plaintiff] can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

In the present case, Plaintiff testified that she stopped working in December 2000 because her seizures "got to an uncontrollable state." (Tr. at 26.) She also testified that, since 2000, her seizures have become "more and more frequent." (Tr. at 27.) By the time of her hearing in 2009, Plaintiff claimed to experience nighttime seizures two to three times per week and daytime seizures "probably about once a month." (Tr. at 27, 31.) She further stated that, after experiencing a seizure, she awakens with bruises on her head and extreme

confusion and fatigue, such that it typically takes her "about 24 hours to get over a seizure." (Tr. at 31.)

As noted in the ALJ's decision, however, Plaintiff's "allegations regarding her seizure activity are not fully consistent with the medical evidence" or with her extensive activities of daily living. (Tr. at 18.) In particular, the medical records reflect that daytime seizures are a rarity for Plaintiff and that in September 2008, Plaintiff reported to her neurologist, Dr. Reynolds, that she had experienced no daytime seizures in the previous six months. (Tr. at 16, 355, 356.) Moreover, the ALJ noted that Plaintiff's description of extreme limitations created by her nighttime seizures was inconsistent with her inability to describe the frequency of those seizures to Dr. Reynolds. (Tr. at 16.) Dr. Reynolds' treatment notes show that Plaintiff "believes that she is having seizures at night because sometimes she will awaken with her tongue bitten or with a bump on her head, but she does not have a good feel for how frequently this is happening." (Tr. at 360.)

Plaintiff admits that she is unable to describe her seizures with specificity, but she "submits that her inability to precisely recall the nature and frequency of her seizures should not affect her credibility," as this failing "merely reflects the nature of [her] impairment." (Doc. 10 at 4.) Unfortunately for Plaintiff, the medical records in the present

12

case undermine her argument, as they demonstrate that Plaintiff "has had chronic problems with remembering to record her seizures or to make a seizure calendar" as directed by her neurologist. (Tr. at 16, 355, 356.) Plaintiff's vague descriptions of her seizures therefore reflect a lack of compliance rather than the nature of the impairment itself, and the ALJ was entitled to regard this as a factor weighing against her credibility. See SSR 96-7p, 1996 WL 374186, at *7 (Jul. 2, 1996) (A claimant's "statements may be less credible if . . . the medical reports or records show that [she] is not following the treatment as prescribed and there are no good reasons for this failure.").

Plaintiff's credibility is further undermined by her daily activities, which, as the ALJ observed, are incompatible with an individual who essentially "loses" 24 hours several days per week. Specifically, the ALJ found that Plaintiff

> has continued to provide care for her son, who was approximately 8 years old as of the alleged onset date and is now 16. She provides care for four pit bull dogs. She shops for groceries and performs housework. The claimant's nocturnal seizures[,] therefore, do not significantly affect her ability to engage in activities of daily living.

(Tr. at 18.) The ALJ also noted significant inconsistencies within Plaintiff's own descriptions of the limitations from her nocturnal seizures. Under SSR 96-7p, the ALJ must consider "[t]he degree to which [Plaintiff's] statements are consistent

13

with the . . . information provided by medical sources, including information about medical history and treatment," as well as the internal consistency of Plaintiff's own statements. 1996 WL 374186, at *5. Here, in contrast to the severe symptoms she described at her hearing, Plaintiff told her treating neurologist on multiple occasions that "often she only knows about [her seizures] by waking up with 'bumps on [her] head' and she does not have a good feel for how frequently this happens." (Tr. at 358; see also Tr. at 18, 355, 356, and 360.) In fact, the acute symptoms Plaintiff and her mother described at the hearing find no support in the medical record. Again, the ALJ was entitled to weigh these inconsistencies against Plaintiff when assessing her credibility. Given all of the above considerations, substantial evidence supports the ALJ's credibility determination as to Plaintiff's seizures.

In a similar argument, Plaintiff denies any material inconsistency between her testimony that she experienced migraines "once per week" and her report to her treating physician that they occurred 3 to 4 times per month. (Doc. 10 at 4-5.) In her brief, Defendant "acknowledges that these two reports are not necessarily inconsistent." (Doc. 12 at 8.) However, she asserts that "the ALJ relied on other substantial evidence discounting" Plaintiff's description of severe limitations from her migraines. (Id.) Specifically, as with

Plaintiff's seizures, the ALJ found that Plaintiff continues to "engage in a wide variety of activities of daily living" despite her headaches. (Tr. at 18.) As noted in the decision, the medical records also demonstrate the improvement of Plaintiff's headaches over time, as indicated by both her self-reports to her physicians and her decreased use of medication over a span of several years. (See Tr. at 18, 223, 225-28, 355-56, 358, 360.) In fact, Plaintiff most recently reported to her treating neurologist, Dr. Reynolds, that she had been experiencing fewer, albeit more intense, migraines. (Tr. at 355.) She also reported that her prescription of Maxalt, a medication for the acute treatment of migraines, lasted the entire month, which Dr. Reynolds noted as "very unusual," and that Maxalt is effective in making her migraines subside. (Tr. at 18, 355-56, 360.) Although Plaintiff testified to a sudden, dramatic increase in her headaches in the month preceding her hearing, nothing in the record supports her testimony. (Tr. at 34.) The ALJ conscientiously applied the factors set out in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) and found that those factors, including Plaintiff's daily activities, effective treatment, and the diminishing frequency of her attacks per the medical records, demonstrated, as with Plaintiff's seizures, that her symptom allegations were not entirely credible. Accordingly, substantial evidence supports his decision.

### III. CONCLUSION

For the reasons set forth above,

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is AFFIRMED, Plaintiff's Motion for Summary Judgment (Doc. 9) is DENIED, Defendant's Motion for Judgment on the Pleadings (Doc. 11) is GRANTED, and this action is DISMISSED WITH PREJUDICE.

                                            /s/   Thomas D. Schroeder
                                       United States District Judge

December 30, 2013